In the Supreme Court of Georgia

Decided:    April 4, 2016

S16A0262.  BONMAN v. THE STATE.

THOMPSON, Chief Justice.

Appellant Curtis Bonman was found guilty of malice murder and other related crimes arising out of the shooting death of Charlie Davis, Jr.[1]  His motion for new trial was denied, and on appeal, he asserts that the trial court erred by refusing to give his requested charge on involuntary manslaughter. Finding no reversible error, we affirm.

1.  The evidence presented at trial authorized the jury to conclude that

[1] The crimes occurred on August 27, 2013.  Appellant was indicted on February 11, 2014, by a Richmond County grand jury for malice murder, felony murder predicated on aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.  Following a three day jury trial from June 23-25, 2014, appellant was found guilty of malice murder, felony murder, and possession of a firearm during the commission of a crime.  The felon in possession of a firearm count was nolle prossed by the State and the trial court sentenced appellant on June 26, 2014, to life in prison on the malice murder count and five years consecutive for the count of possession of a firearm during the commission of a crime.  The felony murder count was vacated as a matter of law.  See Malcolm v. State, 263 Ga. 369, 371-374 (434 SE2d 479) (1993).  Appellant's motion for new trial, filed on July 27, 2014, was denied by the trial court on September 8, 2014, and he filed a notice of appeal on October 7, 2014.  His appeal was docketed in this Court, assigned to the January 2015 term, and submitted for decision on the briefs.

appellant and two co-defendants, Thaddeus Williams and Killeon Cooper, planned to rob Davis, a drug dealer, in retaliation for a previous drug purchase in which Cooper felt he had been "shorted." On the night of the crimes, the three men, each of whom was armed with a gun,[2] drove to the housing project where Davis lived, approached Davis as he was standing outside, and started shooting. Appellant and Cooper chased Davis as he tried to run away, and after Davis stumbled, Cooper continued shooting. When Cooper ran out of ammunition or his gun jammed, appellant, who was standing next to him, gave Cooper his gun and more shots were fired at Davis. One of the bullets from appellant's gun hit Davis in a major blood vessel in his hip, causing his death.

Although he initially denied any involvement in the crimes, appellant eventually told investigators that he drove with Williams and Cooper to Davis' residence because Cooper wanted to get his money back and that Cooper had instructed appellant to act as a lookout, telling him he would know what to do if there was trouble. Cooper also told appellant he might get "a sack or two [of marijuana]" for his trouble. Appellant admitted that all three men were armed;

---

[2] Appellant claimed he had in his possession a Hi-Point 9 millimeter pistol, Cooper had .40 caliber pistol, and Williams had a 9 millimeter pistol.

that he fired an initial shot in the air to "clear the scene;" that he tried to fire another shot at Davis but his gun jammed; and that he gave his gun to Cooper. He asserted, however, that it was Cooper who approached Davis and fired the fatal shot at Davis.

Investigators recovered multiple cartridge casings and projectile fragments from the crime scene. A firearms expert was able to match the 9 millimeter cartridge casings recovered from the scene to the Hi-Point 9 millimeter pistol appellant admitted using and giving to Cooper. The expert concluded that one of the projectiles was fired from a Hi-Point 9 millimeter pistol but he could not say conclusively that it was fired from appellant's gun.

Construed in the light most favorable to the verdicts, we find the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, appellant asserts the trial court erred by refusing his request to charge the jury on unlawful act involuntary manslaughter as a lesser included offense of murder. See OCGA § 16-5-3 (a). OCGA § 16-5-3 (a) provides that "[a] person commits the offense of involuntary

manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." Appellant contends the jury could have believed his statement that he first shot into the air, and based on this statement, the jury would have been authorized to conclude that this bullet fell, struck Davis in the thigh, passed completely through him, and landed in the grass where it was recovered by investigators. This evidence, he argues, required the trial court to give the requested charge. See Rogers v. State, 289 Ga. 675, 677 (2) (715 SE2d 68) (2011) ("[A] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." (citation and punctuation omitted)).

Even assuming it was error for the trial court to refuse to charge the jury on involuntary manslaughter, we conclude the error was harmless. The version of events offered by appellant in support of the requested charge was inconsistent with the testimony of multiple witnesses who testified that Davis was shot at close range by two men standing near him and was inconsistent with appellant's own statement to police in which he asserted that Cooper inflicted the fatal injury. Moreover, appellant's statement established that he and his co-

4

defendants, each armed with a gun, went to Davis' residence with the intent to rob him and that appellant gave Cooper his gun which was then used to shoot Davis at close range. This evidence supported the finding, necessarily made by the jury when it found him guilty of malice murder, that appellant intended to kill Davis. See id. (refusal to charge involuntary manslaughter as a lesser included offense was harmless error where the jury, by finding defendant guilty of malice murder, necessarily found he intended to kill the victim). Accordingly, we conclude it is highly probable that the trial court's refusal to charge on involuntary manslaughter did not contribute to the verdict, and we affirm appellant's conviction. See id.; Rhode v. State, 274 Ga. 377, 382 (10) (c) (552 SE2d 855) (2001); Edwards v. State, 264 Ga. 131, 133 (442 SE2d 444) (1994).

Judgment affirmed. All the Justices concur.