305 Ga. 882
FINAL COPY

S19A0634.  GRIER v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Lamaris Grier appeals his convictions for two murders and related crimes, contending that the evidence was insufficient to support the verdict, trial counsel was ineffective for failing to object to improper testimony and closing argument, and the prosecutor engaged in misconduct.[1] For the reasons set forth

---

[1] On January 2, 2014, Grier was indicted for two counts of malice murder, four counts of felony murder (two counts predicated on aggravated assault and two counts predicated on possession of a firearm by a convicted felon), two counts of aggravated assault, one count of possession of a firearm by a convicted felon, and one count of possession of a firearm during the commission of a felony. Following a May 2015 jury trial, Grier was found guilty on all counts charged against him. On May 8, 2015, Grier received a life sentence for each malice murder count to run concurrently, and five years in prison for possession of a firearm during the commission of a crime to run consecutively. The trial court merged the aggravated assault counts and the count of possession of a firearm by a convicted felon into the malice murder counts, and the felony murder counts were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993). Although the trial court did not sentence Grier on the felon-in-possession count, the State has not raised this issue in a cross-appeal. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). Grier filed a timely motion for new trial on June 4, 2015, which he amended on January 23, 2017, and on July 5, 2017. The trial court denied the motion on September 10, 2018. On October 8, 2018, Grier filed a timely notice

below, we affirm.

1. In the light most favorable to the verdict, the record show that, on October 4, 2013, Grier shot and killed Jerry Grier (Jerry)[2] and Jamanius Mills at Jerry's DeKalb County residence. Around 8:30 that morning, Jerry's girlfriend, Shaquila Bryant, stopped by Jerry's house and saw Grier sitting on the couch inside Jerry's room. About two hours later, Jerry's friend, Ty Tukes, stopped by to purchase some marijuana from Jerry at the same time that Mills was walking up to the house. When Tukes and Mills entered the house, Grier and Jerry were on the couch in Jerry's room playing a video game, and there was a bundle of cash on the TV stand. Tukes asked if the men were betting, and Grier said they were and that he was losing. Jerry was known to be very good at video games and would often bet with others on the outcome of the games. After talking to the men briefly about the game, Tukes purchased marijuana from Jerry, and left the house around 10:45 a.m. Some time shortly after Tukes left, Grier

of appeal, and the case was docketed in this Court for the April 2019 term and submitted for a decision on the briefs.

[2] Grier and Jerry are not related.

called his friend Darius Gibson, who was in a car with Deonte McDowell, and told Gibson not to come by Jerry's house because he had "just offed them boys." Gibson, assuming that Grier was kidding, brushed off the comment, and he and McDowell stuck with their original plan and drove to Jerry's house to smoke marijuana. When Gibson and McDowell arrived at Jerry's house, the screen door was open, but the front door was locked, so the two men left.

Police were called to the scene around 6:30. that evening when Jerry's younger sister discovered Jerry's and Mills's dead bodies. Both men were shot twice and died of gunshot wounds to the head. The police recovered four cartridge casings and two bullet fragments consistent with being fired from a Glock .40-caliber handgun.[3] The police also observed that Jerry's and Mills's pants pockets were turned inside out, and there were no signs of forced entry into the house.

Both Tukes and Bryant testified that, when they saw Grier's

---

[3] Gibson confirmed during trial that Grier was known to carry a Glock .40-caliber handgun.

face on the news as a suspect in relation to the murders, they recognized him as the person sitting on the couch with Jerry on the morning of the shooting. They also confirmed that Grier was the only other person at the house with Jerry and Mills that morning. Gibson also testified that he saw Grier's car in Jerry's driveway earlier that morning, but when he came back by the house shortly before noon, Grier's car was gone. Gibson added that it was odd that Grier would be at Jerry's without him or McDowell, because Grier was not especially close with Jerry. Further, cell phone evidence established Grier's presence in the area where the shooting occurred between 8:31 a.m. and 10:54 a.m. on October 4, 2013.

Grier contends that there was insufficient evidence to convict him of the crimes for which he was found guilty. We disagree and find the evidence presented at trial was sufficient to enable the jury to find Grier guilty beyond a reasonable doubt of the crimes given Grier's admission that he "offed" the victims, cell phone location evidence corroborating his admission, Grier's presence alone with the victims shortly before they were killed, and evidence that Grier

possessed a handgun of the same caliber used to shoot the victims. *Jackson v. Virginia,* 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also *Rampley v. State*, 235 Ga. 101 (218 SE2d 838) (1975) (defendant's conviction was supported by sufficient evidence, including defendant's confession that he struck the child); *Worthem v. State*, 270 Ga. 469 (509 SE2d 922) (1999) (defendant's conviction was based on sufficient evidence where his conviction was not premised solely upon his in-custody confession, but there was sufficient evidence to corroborate his confession to the police).

2. Grier contends that trial counsel was ineffective in failing to object to certain testimony by witnesses regarding the ultimate issue of guilt and failing to object to a comment referring to evidence admitted under OCGA § 24-4-404 (b) ("Rule 404 (b)") during the State's closing argument. To prevail on these ineffective assistance claims, Grier has the burden of proving

> [t]hat the performance of his lawyer was professionally deficient and that he was prejudiced as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, [Grier] must show that his trial counsel

acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. See *Lupoe v. State*, 300 Ga. 233, 239-240 (794 SE2d 67) (2016). To prove resulting prejudice, [Grier] must show a reasonable probability that, but for [trial] counsel's deficiency, the result of the trial would have been different. Id. at 240. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one. Id., citing *Strickland*, 466 U. S. at 697.

(Punctuation omitted.) *Stuckey v. State*, 301 Ga. 767, 771 (2) (804 SE2d 76) (2017). We conclude that Grier cannot meet this burden with regard to either of his claims.

(a) First, Grier argues that trial counsel was ineffective in failing to object to McDowell's, Tukes's, and Gibson's "opinions" that Grier killed Jerry and Mills because this testimony invaded the jury's province and commented upon the ultimate issue. During trial, Tukes testified that when Grier's picture was shown during news coverage of the shooting, he thought to himself that "this must be the guy that killed [Jerry]." Gibson then testified that when he and McDowell went to Jerry's house later that night after learning of his death, Gibson said to himself "[Grier] killed [Jerry]," based on

the phone call he had received from Grier earlier that day. After Gibson, McDowell testified that he too "automatically thought . . . it had to be [Grier] because he said what he said [to Gibson] and . . . [the men] ended up dead."

We find that the ineffective assistance claim relating to Gibson's testimony is waived because Grier failed to allege the error, as it relates to Gibson's testimony, during his motion for new trial.[4] *Williams v. Moody*, 287 Ga. 665, 666 (1) (697 SE2d 199) (2010) ("In order to avoid a waiver of a claim of ineffective assistance against trial counsel, the claim must be raised at the earliest practicable moment, and that moment is before appeal if the opportunity to do so is available.") (Citation and punctuation omitted.). Where, as here, appellate counsel raised other ineffective assistance claims during the motion for new trial, he had the opportunity to raise a claim against trial counsel for failing to object to Gibson's testimony as well. *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993)

---

[4] In his brief on appeal, Grier notes that Gibson's testimony that, "I said to myself [Grier] killed [Jerry]," was not objected to by defense counsel, but no specific error was alleged in connection with his motion for new trial.

(appellant's claim is waived where he raised a second claim of ineffective assistance of counsel against trial counsel on different grounds from those supporting the original claim of ineffective assistance).

As to the remaining claims, trial counsel's failure to object was not ineffective assistance of counsel. Both Tukes's and McDowell's opinions that Grier must have been the one to kill the victims were "rationally based on [their] perception and helpful to understanding [their] testimony." (Citation and punctuation omitted.) *United States v. Campo*, 840 F3d 1249, 1266 (11th Cir. 2016). See OCGA § 24-7-701.[5] See also *Glenn v. State*, 302 Ga. 276, 280 (II) (806 SE2d 564) (2017) ("[OCGA § 24-7-701 (a)] is modeled on Federal Rule of

---

[5] OCGA § 24-7-701 provides:
    (a) If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:
        (1) Rationally based on the perception of the witness;
        (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and
        (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.
OCGA § 24-7-701 (a).

Evidence 701 (a), and when we consider the meaning of such provisions, 'we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit.'") (Citation omitted.).  Even though neither Tukes nor McDowell saw Grier shoot the victims, their opinions were inferences formed by events they had personal knowledge of on that day, including that Tukes saw Grier alone with the victims before they were killed and that McDowell knew Grier said he "offed them boys." "And even though [their] 'opinion' about who killed [the victims] addresse[d] an ultimate issue in the case, that alone does not make the testimony objectionable." *Campo*, supra, 840 F3d at 1266-1267.  See OCGA § 24-7-704 (a) ("Except as provided in subsection (b) of this Code section, testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact."). See also Fed. R. Evid. 704 (a) ("An opinion is not objectionable just because it embraces an ultimate issue."); *State v. Almanza*, 304 Ga. 553, 556

(820 SE2d 1) (2018) ("[I]f a rule in the new Evidence Code is materially identical to a Federal Rule of Evidence, we look to federal case law."); *United States v. Dulcio*, 441 F3d 1269, 1274 (11th Cir. 2006) (Federal Rule 704 (b)'s bar on ultimate issue applies only to expert witness testimony and not opinion testimony by lay witnesses). Trial counsel cannot be deficient for failing to object to admissible testimony. *Jackson v. State*, 288 Ga. 213, 215 (2) (b) (702 SE2d 201) (2010), citing *Sims v. State*, 281 Ga. 541, 543 (2) (640 SE2d 260) (2007) (trial counsel is not ineffective for failing to object to admissible testimony concerning a prior difficulty because such objection would be without merit). Thus, this claim fails. *Stuckey*, supra, 301 Ga. at 771 (2).

(b) Grier also contends that trial counsel was ineffective in failing to object when the prosecutor commented during closing argument on other acts evidence that negatively reflected upon Grier's character. During a pre-trial hearing, the State sought to introduce evidence of Grier's prior guilty plea convictions for armed robbery and aggravated assault, as well as testimony of the victim

from these prior crimes. The trial court then granted the State's motion to admit the other acts evidence for the purpose of showing intent under Rule 404 (b).[6] The prosecutor made the following comments when referencing the other acts evidence in closing arguments:

> PROSECUTOR: So, what you're dealing with when you're saying do I have a man who could, with intent, shoot two individuals? And the answer is yes, you can because Johnny Webb told you I'm coming back from a bar. [Grier] puts me on the ground. He's robbing me and he shoots me not once, not twice, but three times. That's not disputed. [Grier] says yes, I did it. He pled to it. So, if you have any doubt that this be the man that could form the intent because you're robbing someone . . . we have here is that not just tied to [Grier], but how [Grier] would use a gun.

Even assuming that Grier were able to establish that counsel performed deficiently by not objecting, he has not demonstrated prejudice. *Stuckey*, supra, 301 Ga. at 771 (2). Given the evidence against Grier, as discussed in Division 2 (a), supra, and in light of the fact that the jury had already heard the Rule 404 (b) evidence during trial, the trial court had instructed the jury on the limited

---

[6] On appeal, Grier enumerates no error regarding the admission of the Rule 404 (b) evidence.

purpose of the Rule 404 (b) evidence, and the trial court instructed to the jury that closing arguments were not to be considered as evidence, it cannot be said that there is a "reasonable probability that the outcome would have been more favorable" even if counsel had objected. *Bridges v. State*, 286 Ga. 535, 539 (3) (690 SE2d 136) (2010).

3. Grier contends that the prosecutor engaged in misconduct requiring reversal of the convictions when he told the jury to consider the other acts evidence for impermissible purposes during closing argument. However, in the absence of any objection during the proceedings regarding the misconduct, this allegation of error is not properly before our Court for review, and is thus waived. *Ford v. State*, 298 Ga. 560, 562 (2) (783 SE2d 906) (2016) ("The contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct.") (Citation and punctuation omitted.). See also *Duvall v. State*, 290 Ga. 475, 476 (2) (a) (722 SE2d 62) (2012) (defendant's claim of prosecutorial misconduct cannot be raised for the first time on

appeal).

Judgment affirmed. All the Justices concur.

Decided May 20, 2019.

Murder. DeKalb Superior Court. Before Judge Jackson.

Dell Jackson, for appellant.

Sherry Boston, District Attorney, Harry S. Ruth, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General, for appellee.