309 Ga. 785
FINAL COPY

S20A0934.  SNIPES v. THE STATE.

McMILLIAN, Justice.

Chiquita Snipes was convicted of the malice murder of Ty'Qwan Edge, a two-year-old child in her care.[1] She appeals from

---

[1] Ty'Qwan succumbed to his injuries on May 22, 2010. On October 18, 2010, a Pike County grand jury indicted Snipes and Kenisha Neal for malice murder (Count 1), three counts of felony murder (Counts 2-4), aggravated assault (Count 5), aggravated battery (Count 6), first-degree cruelty to children (Count 7), and second-degree cruelty to children (Count 8). Snipes demurred to Counts 3, 6, and 8, which the trial court granted on September 20, 2012. The State subsequently recast the indictment with the remaining charges: malice murder (Count 1), two counts of felony murder (Counts 2-3), aggravated assault (Count 4), and first-degree cruelty to children (Count 5). Neal pleaded guilty to felony murder before trial in exchange for a life sentence with the possibility of parole and agreed to testify for the State. At a trial conducted from April 15 to 19, 2013, the jury found Snipes guilty of all counts. The trial court sentenced Snipes to serve life in prison without the possibility of parole for malice murder. The trial court purported to merge all remaining counts, but the felony murder counts were actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-72 (4) (434 SE2d 479) (1993). Although the first-degree cruelty to children count should not have merged into the malice murder court, see *Vasquez v. State*, 306 Ga. 216, 234-35 (4) (830 SE2d 143) (2019), the State has not challenged this merger error on appeal, and we decline to address it. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). Snipes filed a timely motion for new trial, which was later amended by appellate counsel five times between October 2016 and October 2018. Following a hearing in January 2019, the trial court denied the motion on December 9, 2019. Snipes timely filed a notice of appeal, and the case was docketed to the April 2020 term of this Court and submitted for a decision on the briefs.

the denial of her motion for new trial, challenging the sufficiency of the evidence, the trial court's jury charge, and trial counsel's performance on several grounds. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that in April 2010, Snipes was living with her co-defendant, Kenisha Neal, along with Neal's nine-year-old niece, T. W., and Neal's bedridden mother, when Ty'Qwan, Neal's two-year-old godson, came to stay with them. On May 22, an officer responded to a call for an unresponsive child and found Snipes performing CPR on Ty'Qwan, who was wearing nothing but a tee shirt. The officer observed several marks on the child, some that were in the process of healing and others that appeared to be fresh or "red meat" marks. He also saw what appeared to be a fairly large cut on the child's penis. Neal was standing nearby, watching; nobody appeared upset. Neal stated that the child, whom they were trying to potty train, had woken up around 5:00 a.m. After she took him to the bathroom, she brought him back to bed with her, and

when she tried to wake him at 7:00 a.m., he was unresponsive. She first called the child's mother, and when the mother arrived and could not wake him, they called 911. Snipes had been sleeping in a separate bedroom further back in the house.

Snipes told officers that she, Neal, and Ty'Qwan had gone to bed around midnight. Around 4:00 a.m., she heard "a loud bump," and upon investigation, she saw Neal in the bathroom with the child. Neal told her that Ty'Qwan had fallen off the toilet and struck his head on the bathtub. Snipes applied ice to his head for ten to fifteen minutes. When they asked Ty'Qwan if he was okay, he nodded yes, and they all went to sleep in the back bedroom. Snipes woke again at 5:15 a.m. and saw that Ty'Qwan was breathing. When she woke at 7:00 a.m., she found Neal and Ty'Qwan in the living room, and Neal told her that she could not wake him. When Snipes tried to rouse him, his body was cold.

In searching the bathroom, officers found two spots that were later confirmed to be Ty'Qwan's blood. The medical examiner testified that the victim, who was dehydrated and slightly

undernourished, had numerous injuries in various states of healing all over his body and bruises over most of his face. The head injuries appeared more recent, many within eight hours of his death, including a large area of extensive bruising on the left side of his face. She testified that the injury to his ear was very significant because it is difficult to accidentally injure the ear. She noted scratches and tearing to his lips and mouth area, a tongue contusion, and a bruise on his neck indicating pressure under the chin, along with fingernail-type scratches. A deeper abrasion on his right forearm was consistent with his either having been hit with a hot object or a very forceful impact with an object. His right arm and right leg had wounds consistent with bite marks. His buttocks showed injuries consistent with being spanked with an object hard enough to scrape the skin. There were two injuries to his penis; the more serious injury split the skin open and was consistent with a ligature-type injury. The internal examination revealed ten areas of hemorrhaging under the scalp, some older and some recent. His brain was significantly swollen with minor areas of bleeding on the

surface and other denser areas of bleeding and blood clots. There was also hemorrhaging in and around the optic nerves of both eyes, indicating severe trauma to the head.

The medical examiner opined that the injuries were not consistent with a single fall in a bathroom and that there was no indication of natural disease. The medical examiner concluded that the victim's acute and chronic injuries, particularly the swelling, bleeding, and nerve damage in the brain, along with dehydration, combined to cause his death. A forensic odontologist testified that at least two of the three bite-like injuries were caused by a forceful human bite, resulting in a crushing type injury. She was unable to exclude either Neal or Snipes as having caused the bite injuries.

Neal testified that on the day before his death, Snipes was alone with Ty'Qwan most of the day. Because Neal was frequently out of the house, Snipes was the main disciplinarian. Neal claimed that she had only spanked Ty'Qwan once and that she preferred using time-outs. However, she had witnessed Snipes hold Ty'Qwan upside down by his ankle and hit him hard multiple times with a

belt and a brush. Snipes once hit him with a brush so hard that it caused the brush to break. When Ty'Qwan had an accident while potty training, Snipes put hot water from a coffee pot on a rag and put it on his penis. Another time, Snipes forced Ty'Qwan to stand naked over a vent all night after he had an accident. Sometime after his death, Snipes told Neal for the first time that Ty'Qwan had accidentally fallen in the kitchen and hit his head on the refrigerator.

T. W., Neal's niece, testified that she saw Snipes spank Ty'Qwan daily and that Snipes would hold him upside down and use various objects as well as her hand to spank him. At least twice, Snipes caused Ty'Qwan's head to hit the wall "hard" as she spanked him. T. W. also saw Snipes force Ty'Qwan to stand in one place for hours at a time. When she witnessed Snipes and Neal put a rag with hot water on Ty'Qwan's penis, she felt sorry for Ty'Qwan because he screamed and cried for a long time.

At trial, the State also played a recording of Snipes's interview with law enforcement, in which Snipes admitted biting Ty'Qwan,

pinching him, hitting him in the face, holding him upside down and accidentally causing his head to hit a doorknob, spanking him with a belt and brush, and putting water on his penis that may have caused an injury during the days leading up to his death.

1. Snipes asserts that this evidence was insufficient to support her convictions for malice murder and felony murder.[2] When evaluating the sufficiency of evidence under the Fourteenth Amendment to the United States Constitution, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the

---

[2] Because Snipes was only sentenced on the malice murder count, her claims as to the sufficiency of the evidence supporting any other merged or vacated counts are moot. We thus limit our review to the sufficiency of the evidence presented at trial regarding the malice murder count. See *Mills v. State*, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010).

resolution of such things to the discretion of the trier of fact." *Mims v. State*, 304 Ga. 851, 853 (1) (a) (823 SE2d 325) (2019) (citation and punctuation omitted).

Snipes argues that, whatever may have occurred on the night of May 22, 2010, the only person with Ty'Qwan at that time was Neal, whose statements against Snipes lack credibility. Thus, only Neal could be responsible for Ty'Qwan's death. This argument, however, grossly mischaracterizes the evidence presented at trial. The State's medical examiner testified that Ty'Qwan's death was caused by the cumulative effect of his injuries, both acute and chronic, and not by any single injury on the night of his death. In addition to the specific acts of abuse that Snipes admitted, both Neal and T. W. testified that they had witnessed Snipes's ongoing abuse of Ty'Qwan, which included causing his head to hit the wall "hard" on two occasions. "[I]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Bamberg v. State*, 308 Ga. 340, 343 (1) (a) (839 SE2d 640) (2020) (citation and punctuation omitted). Also, even if Neal caused

the most immediate injuries to Ty'Qwan, the trial court instructed the jury that Snipes could be convicted as a party to the crime of malice murder, which the evidence supported. See OCGA § 16-2-20 (defining a party to a crime); *Debelbot v. State*, 305 Ga. 534, 538 (1) (826 SE2d 129) (2019) (although the evidence was entirely circumstantial as to who committed the crimes, it was legally sufficient to support both the mother and father's convictions for the malice murder of their infant). We thus conclude that the evidence presented at trial was sufficient to authorize a rational jury to find Snipes guilty beyond a reasonable doubt of malice murder. See *Walker v. State*, 308 Ga. 33, 35-36 (1) (838 SE2d 792) (2020) (evidence sufficient to sustain conviction for malice murder where the child sustained numerous injuries in days leading up to her death while living with defendant, the child's injuries were not consistent with the defendant's explanations, and the defendant made an incriminating statement).

2. Snipes asserts that the trial court erred by failing to charge the jury on felony involuntary manslaughter as a lesser-included

offense of the murder counts. We disagree. Prior to trial, Snipes requested a jury instruction on the lesser-included offense of felony involuntary manslaughter predicated on simple battery. On two separate occasions during the trial, the trial court provided written copies of the proposed jury instructions to counsel. During the subsequent charge conference, Snipes made no objection to the trial court's proposed instructions, which did not include her requested charge. Accordingly, we review this claim only for plain error. See *Jackson v. State*, 305 Ga. 614, 618 (2) (825 SE2d 188) (2019).

> To show plain error, [Snipes] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected [her] substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Lyons v. State*, __ Ga. __, __ (2) (843 SE2d 825) (2020) (citation and punctuation omitted).

Each of Snipes's trial counsel testified at the motion for new trial hearing that they originally sought an instruction on involuntary manslaughter based on the possibility that Snipes's acts

of discipline contributed to Ty'Qwan's death.[3] However, Snipes's defense at trial was that any discipline she imposed in loco parentis did not cause Ty'Qwan's death and that Neal, who was "an aggressive person with a propensity to anger," alone inflicted his fatal injuries while Snipes was sleeping. If the jury believed Snipes's theory at trial, Snipes could not have been convicted of either malice murder or involuntary manslaughter. In any event, because the jury found Snipes guilty of malice murder, it necessarily found that she intended to kill Ty'Qwan, and it is highly probable that any error in refusing the requested charge did not contribute to the jury's verdict. Accordingly, pretermitting whether Snipes affirmatively waived this issue and whether the trial court erred in failing to instruct the jury on involuntary manslaughter, we conclude that Snipes has not shown plain error.[4] See *Bonman v. State*, 298 Ga. 839, 840-41 (2)

---

[3] OCGA § 16-5-3 (a) provides that "[a] person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. . . ."

[4] Any claims of error Snipes raises as to jury instructions related to the counts of felony murder, aggravated assault, and cruelty to children in the first

(785 SE2d 288) (2016) (trial court's refusal to charge involuntary manslaughter as a lesser included offense was harmless error where the jury, by finding the defendant guilty of malice murder, necessarily found that he intended to kill the victim); *Rogers v. State*, 289 Ga. 675, 678 (2) (715 SE2d 68) (2011) (by finding the defendant guilty of malice murder, the jury made an additional, specific finding that he intended the victim's killing and it is highly probable that the trial court's refusal to give a charge on involuntary manslaughter did not contribute to the verdict).

3. Snipes alleges that she was denied constitutionally effective assistance of counsel in several respects. To succeed on this claim, she must demonstrate both that her trial counsel performed deficiently and that, absent that deficient performance, a reasonable probability exists that the outcome at trial would have been different. See *Strickland v. Washington*, 466 U.S. 668, 687-95 (III) (104 SCt 2052, 80 LE2d 674) (1984). If she fails to satisfy either part

degree are moot, as each of those counts merged into the malice murder count. See *Walker*, 308 Ga. at 36 (2) n.3.

of the *Strickland* test, we need not consider the other. See *Hawkins v. State*, 306 Ga. 809, 812 (2) (833 SE2d 522) (2019). To prove deficient performance, a defendant must show that trial counsel performed at trial "in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms." *Shaw v. State*, 307 Ga. 233, 249 (6) (835 SE2d 279) (2019) (citation and punctuation omitted). "[S]atisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019). With these principles in mind, we address each of Snipes's claims in turn.

(a) Snipes first argues that trial counsel performed deficiently for not objecting when the trial court failed to instruct the jury on involuntary manslaughter as a lesser-included offense.[5] However, as

---

[5] Although Snipes also challenges trial counsel's failure to object to the trial court's omission of charges on simple battery and battery as lesser-

we explained in Division 2, a jury instruction on involuntary manslaughter would have contradicted Snipes's defense that she had no involvement in the specific acts that caused Ty'Qwan's death. "Trial counsel's decision about which defense to present is a matter of trial strategy, and counsel's decision to pursue this defense in this case was not objectively unreasonable." *Floyd v. State*, 307 Ga. 789, 802 (4) (b) (837 SE2d 790) (2020) (because a request for instructions on voluntary manslaughter would have been contrary to reasonable defense strategy employed by trial counsel, appellant failed to show counsel's performance was deficient). Accordingly, this claim of ineffective assistance fails.

(b) Snipes next argues that trial counsel failed to object, move to exclude, move to strike, or seek curative instructions as to certain portions of Neal's testimony that she alleges interjected her character into evidence.

(i) After Neal testified that she had seen Snipes holding

included offenses of aggravated assault and cruelty to children in the first degree, these arguments are moot because those counts merged at sentencing. See *Walker*, 308 Ga. at 36 (2) n.3.

Ty'Qwan upside down and "whupping him" with a brush, the prosecutor asked whether Snipes appeared to have lost her temper. After Neal testified that Snipes looked like she had lost her temper and that it looked like Snipes had a lot of anger in her, the prosecutor asked, "What type of person is [Snipes]? Does she have a lot of anger in her?" Neal responded, "Yes, sir."

We first note that Neal's initial response that Snipes appeared to be hitting Ty'Qwan out of anger or because she lost her temper was relevant to the determination of whether Snipes had been engaged in reasonable discipline or the crime of cruelty to children, which requires proof of malice. See OCGA § 16-5-70 (b) ("Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."); *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006) ("With regard to the crime of cruelty to children, criminal intent may be inferred from conduct before, during and after the commission of the crime." (citation and punctuation omitted)); OCGA § 16-3-20 (3) ("The defense of

justification can be claimed . . . [w]hen the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis[.]"). And Neal's testimony as to her perception of Snipes's demeanor at that time was admissible. See *Morgan v. State*, 307 Ga. 889, 895 (3) (a) (838 SE2d 878) (2020) (evidence of defendant's condition and demeanor near the time of the alleged crimes is relevant); *Brown v. State*, 307 Ga. 24, 34 (6) (c) (834 SE2d 40) (2019) (no ineffective assistance for failure to object where witness's testimony was "rationally based on his perception and helpful to understanding his testimony" (citation and punctuation omitted)); OCGA § 24-7-701 (a) (1) (lay witness's testimony in the form of opinions and inferences shall be limited to, inter alia, those opinions or inferences that are rationally based on the perception of the witness).

Moreover, although trial counsel agreed at the new trial hearing that Neal's testimony that Snipes was an "angry" person was prejudicial, counsel also testified that their trial strategy included demonstrating that Neal was actually the violent and

angry one, which they were later permitted to do through several witnesses who testified about Neal's intimidating, controlling, and abusive behavior. Counsel was also permitted to cross-examine Neal regarding her own anger and temper. Under these circumstances, we cannot say that forgoing an objection to Neal's testimony about Snipes's anger in order to pursue similar testimony about Neal's anger without objection was so patently unreasonable that no competent lawyer would have made the same decision. See *Hayes v. State*, 298 Ga. 98, 105 (2) (c) (779 SE2d 609) (2015) ("The matter of when and how to raise objections is generally a matter of trial strategy." (citation and punctuation omitted)); *Johnson v. State*, 294 Ga. 86, 92-93 (7) (b) (750 SE2d 347) (2013) (trial counsel's decision to forgo objection to witness's testimony in favor of impeaching witness was reasonable trial strategy and did not support an ineffectiveness claim). Accordingly, Snipes has failed to demonstrate constitutionally deficient performance as to this ground.

(ii) Turning to Neal's testimony that Snipes must have caused

Ty'Qwan's injuries,[6] trial counsel testified that he did not object because he felt that they would be able to show that Neal was disingenuous. Trial counsel explained they knew Neal was going to testify that everything was Snipes's fault, so they planned to set Neal up with this type of response and then discount it with other testimony showing that Neal caused some of the injuries. We conclude that this trial strategy is not patently unreasonable. See *Koonce v. State*, 305 Ga. 671, 673 (2) (b) (827 SE2d 633) (2019) ("A decision to refrain from objecting to testimony in favor of impeaching a witness or showing inconsistencies in the evidence is a trial strategy, and if reasonable, will not support an ineffectiveness claim.").

---

[6] The record shows the following exchange occurred:

Q: And Miss Neal, you indicated, you've seen the [autopsy] pictures.
A: Yes, sir.
Q: And the medical examiner has testified that there was approximately, more or less, ten wounds to his head.
A: Yes, sir.
Q: Did you cause those wounds?
A: No, sir.
Q: Well, if you didn't cause those wounds, who did?
A: It had to be [Snipes].

Moreover, Neal's opinion that Snipes must have been the one to cause Ty'Qwan's injuries was based on her perceptions and personal knowledge, including that she had seen Snipes inflict multiple forms of physical punishment previously and that Neal had been out of the house while Snipes had been with Ty'Qwan most of the day before his death. See *Grier v. State*, 305 Ga. 882, 885-86 (2) (a) (828 SE2d 304) (2019) (witness's opinion testimony admissible where it is rationally based on his perception and helpful to understanding his testimony); OCGA § 24-7-704 (a) ("Except as provided in subsection (b) of this Code section, testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Thus, any objection would have been meritless, and "[t]rial counsel cannot be deficient for failing to object to admissible testimony." *Grier*, 305 Ga. at 886 (2) (a).

(iii) With respect to Neal's testimony that Snipes "wasn't working or nothing," Snipes has not shown how this testimony was evidence of her bad character or otherwise prejudicial. Furthermore,

Snipes did not question either of her trial attorneys as to why they made no objection. "[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic." *Calhoun v. State*, 308 Ga. 146, 151 (2) (b) (839 SE2d 612) (2020) (citation and punctuation omitted).

(iv) In support of her final argument regarding Neal's testimony, Snipes points to two instances of hearsay that she alleges improperly introduced bad character evidence. Neal testified, "They said [Snipes] acted different when I left and she slammed dishes around, stuff like that." She also testified that "[Snipes] had stated to — was my cousin Shamika Mays, said I tore his — excuse my language — 'I tore his ass up.'" Snipes does not offer specific argument regarding how the first statement constituted improper character evidence, and pretermitting whether the second statement constituted improper character evidence, it was largely cumulative of other admissible testimony regarding Snipes's actions toward Ty'Qwan, and therefore Snipes has failed to show that trial counsel was deficient in failing to object to this testimony or that a

reasonable probability exists that the outcome of the trial would have been different if the objection had been made. See *Sawyer v. State*, 308 Ga. 375, 384 (2) (b) (839 SE2d 582) (2020) (trial counsel not deficient in failing to object to cumulative testimony); *Wilson v. State*, 297 Ga. 86, 88 (2) (772 SE2d 689) (2015) (failure to object to custodial statements that were cumulative of defendant's own properly admitted statements does not support a claim of ineffective assistance of counsel).

(c) Snipes next contends that trial counsel performed deficiently by eliciting and failing to move to strike damaging testimony on cross-examination of the lead investigator. We begin by noting that "[d]ecisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel." *Morrison v. State*, 303 Ga. 120, 126 (5) (b) (810 SE2d 508) (2018) (citation and punctuation omitted). See also *Naples v. State*, 308 Ga. 43, 55 (3) (b) (838 SE2d 780) (2020).

(i) Snipes first points to trial counsel's question regarding

which injuries the investigator was convinced that Snipes had caused. The investigator responded:

> The main injuries, when we interviewed her, we took into account the ones that she could explain. We also took into account that he's a two-year-old and there's typical injuries that are going to occur to a child. But our main focus was the head injuries . . . and the penis. Those were our main concerns. We felt that those were the ones that needed some explanation.

In context, this testimony merely explains which injuries officers were most concerned about and focused on during their investigation, not whether Snipes had actually inflicted the injuries. Thus, Snipes cannot show that trial counsel was deficient for eliciting or failing to move to strike this testimony.

(ii) Next, Snipes points to testimony elicited after trial counsel asked whether the investigator drew a conclusion about Ty'Qwan's other injuries. The investigator responded:

> Yes, sir, the other marks were concerns too, as far as the belt marks and the other brush marks and the bite marks. Those were all concerns. You know, basically we was trying to find out was it just discipline or was it abuse? And my conclusion, my professional conclusion, it was abuse.

Again, whether the investigator believed the acts constituted discipline or abuse, his testimony does not speak to whether Snipes or Neal had committed the acts. And trial counsel also elicited testimony from the investigator that he did not know who had caused Ty'Qwan's head injuries; that Snipes had showed some emotion for the victim, whereas Neal never broke down; and that he did not think Neal was forthcoming.

Moreover, trial counsel testified that his general strategy in cross-examining the lead investigator was to hone in on the investigator's prior testimony that some of the victim's injuries were not life-threatening and to show that it was Neal who was with Ty'Qwan on the night that he received the fatal injuries. We thus conclude that Snipes has failed to show that trial counsel acted unreasonably in failing to move to strike this testimony. See *Grant v. State*, 305 Ga. 170, 178 (5) (g) (824 SE2d 255) (2019) (no ineffective assistance where questioning was part of counsel's attempt to weaken the State's case by impugning the State's ability to connect the defendant's presence at the scene with the victim's murder),

overruled in part on other grounds, *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020).

(iii) Snipes further asserts that trial counsel was ineffective in eliciting testimony from the lead investigator regarding Snipes's credibility and in failing to move to strike that testimony. The record shows that trial counsel asked the investigator about Snipes's statement that she did not notice bruising on the victim when she bathed him on the night of May 21. The investigator responded that based on the answer Snipes had given, he did not believe she was truthful with him about that issue.

Trial counsel testified at the motion for new trial hearing that in questioning the investigator, he was trying to emphasize that if the victim's injuries were recent, it was possible that Snipes did not see the fresh bruising when she bathed him. Snipes has not proved that this strategy was unreasonable.

(d) Snipes also argues that trial counsel failed to properly seek relief following two comments during the prosecutor's closing argument. First, she argues that the prosecutor violated the "golden

rule" when he remarked:

> Ladies and gentlemen, I represent the State of Georgia. But I also represent him. I represent the people that don't have a voice. I represent that happy two-year-old boy. A lot of things have happened this week that made me think about Ty'Qwan. I've got an eight-year-old son that plays baseball here in Pike County. . . . And I couldn't help but think about that young man right there. He'll never learn to ride a bike. He'll never get to play baseball or soccer or football or basketball. He'll never get to enjoy his first kiss. He'll never get to go to the prom. Never get to graduate from high school. Never get to have kids of his own.

However, because this argument "did not ask the jurors to place themselves in a victim's position," it was not a "golden rule" argument, and trial counsel was therefore not deficient in failing to object. *Lord v. State*, 304 Ga. 532, 541 (7) (c) (820 SE2d 16) (2018) (citation and punctuation omitted).

Snipes also points to the following portion of the prosecutor's closing argument:

> Raising kids is tough. Being a kid is tough. I've got a two-year-old daughter and we're going through potty training with her too[.] . . . But she still has accidents, and she peed [o]n the floor, just like Ty'Qwan did. I didn't hold her upside down and take a brush or belt or a backscratcher and hit her. I didn't hit her at all. Later on that night she

stuck her tongue out at me and I popped her on the leg with my hand, one time. That's reasonable folks. . . . This is not. That's malicious, it's cruel, and it shows an abandoned and malignant heart.

Snipes asserts that this statement improperly injected the prosecutor's opinion of what constitutes reasonable discipline versus abuse. We are not persuaded.

A closing argument is to be judged in the context in which it is made. What is more, a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses.

*Styles v. State*, 309 Ga. __, __ (4) (__ SE2d __) (2020) (citation and punctuation omitted). Although the prosecutor's statement here included a personal anecdote, it is not an improper personal opinion regarding what constitutes cruelty to children; rather, it invited the jurors to make a reasonable inference based on the evidence in the case. Cf. *Robinson v. State*, 278 Ga. 31, 36 (3) (c) (597 SE2d 386) (2004) ("While it is improper for counsel to state to the jury his personal belief as to the veracity of a witness, it is entirely proper

for counsel to urge the jury to deduce such a conclusion from proven facts." (citation and punctuation omitted)).

Accordingly, this claim provides no basis for reversal.

(e) Snipes also asserts that trial counsel rendered constitutionally ineffective assistance by failing to object to and seek curative instructions for questions posed to Snipes's mother on cross-examination that called for speculation and opinions about the credibility of other witnesses. We disagree.

Snipes points to the following series of questions posed by the State:

Q: Would it surprise you to know that your daughter admitted to pouring hot water on the child's penis?
. . .
Q: Would it surprise you to know that your daughter admitted to holding the child upside down and hitting him . . . [w]ith her hand and with a brush and with a belt?
. . .
Q: Would it surprise you to know that your daughter admitted to backhanding Ty'Qwan and his head hitting a doorknob?
. . .
Q: Would it surprise you to know that the child, or that [Snipes] admitted to biting Ty'Qwan on the arm?
. . .
Q: Would it surprise you if I was to tell you that your

daughter admitted during an interview that she was carrying Ty'Qwan upside down when he hit his head on the wall?

However, the record shows that these questions were posed in response to testimony from Snipes's mother on direct examination that Snipes interacted well with children; that she had never seen Snipes discipline any children; that Snipes became upset when she saw her sister spanking her sister's daughter for wetting the bed; and that she thought Neal was violent. On cross-examination, the State then confronted her with Snipes's prior statements in which she admitted to inflicting some of Ty'Qwan's injuries by posing the questions about which Snipes now complains. After each question, Snipes's mother continued to defend her daughter and deny that she would do what the State was suggesting.

> [A]lthough it is improper to ask a testifying witness whether another witness is lying[,] . . . it is often necessary to focus a witness on the differences and similarities between his testimony and that of another witness. This is permissible provided he is not asked to testify as to the veracity of the other witness.

*Jones v. State*, 299 Ga. 40, 43 (3) (785 SE2d 886) (2016) (citation, punctuation and emphasis omitted). Here, the State's cross-

examination properly explored the witness's opinions as to Snipes's character when confronted with contrary evidence that had previously been admitted and did not ask the witness to testify as to the veracity of any other witness. See OCGA § 24-4-404 (a) (1) (where a defendant elicits testimony from a character witness regarding a pertinent character trait of the defendant, the prosecution is permitted to cross-examine the witness about specific instances of the defendant's conduct that are relevant to that character trait). See also *Jones*, 299 Ga. at 44 (3) ("[Q]uestioning designed to compare the defendant's factual account with other witnesses' and allow jurors to draw their own conclusions is unobjectionable." (citation and punctuation omitted)). The failure to make a meritless objection does not provide a basis upon which to find ineffective assistance of counsel. See *Newman v. State*, 309 Ga. __, __ (2) (c) (844 SE2d 775) (2020).

(f) Finally, we conclude that the cumulative prejudice from any assumed deficiencies is insufficient to show a reasonable probability that the results of the proceedings would have been different in the

absence of the alleged deficiencies. See *Jones v. State*, 305 Ga. 750, 757 (4) (e) (827 SE2d 879) (2019). Accordingly, Snipes is not entitled to relief under this theory.

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2020.

Murder. Pike Superior Court. Before Judge Edwards.
*W. Allen Adams, Jr.*, for appellant.
*Benjamin D. Coker, District Attorney, Elizabeth A. Baker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.