NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 2, 2023

S23A0256.  BACON v. THE STATE.

COLVIN, Justice.

Following a jury trial, Nicholas Bacon was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of his 64-year-old mother, Montez Bacon ("Montez").[1]  On appeal, Bacon alleges that

---

[1] On September 25, 2017, a Liberty County grand jury indicted Bacon for felony murder predicated on aggravated assault (Count 1), aggravated assault (Count 2), malice murder (Count 3), and possession of a firearm during the commission of a felony (Count 4).  A jury trial was held March 25 through 26, 2019, and the jury found Bacon guilty of all counts.  Bacon was sentenced to serve life in prison with the possibility of parole for malice murder.  He also received a consecutive five-year sentence with three years to serve in confinement and two years suspended for the firearm charge.  All remaining counts were either vacated by operation of law or merged for sentencing purposes.  Bacon timely filed a motion for new trial on July 30, 2019, which was amended through new counsel on January 11, 2021, and February 1, 2021. After a hearing, the trial court denied the motion as amended on August 11, 2022.  Bacon timely filed a notice of appeal.  The appeal was docketed to the term of this Court beginning in December 2022 and was submitted for a decision on the briefs.

the trial court abused its discretion when it excluded the testimony of the defense's expert witness and that he received constitutionally ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. In the afternoon of March 3, 2017, the Savannah Police Department responded to a call concerning a domestic incident between Bacon and Montez. Upon arriving on the scene on the side of Highway 204, officers found Bacon in the backseat of Montez's car. Montez, who appeared "distressed" and "scared," was standing outside of her vehicle. She informed the officers that she wanted Bacon "out of the car," but refused to provide any additional information. Bacon told the officers that "everything was fine" and that Montez was "just mad." The officers concluded that this was a "disorderly person" incident and convinced Montez to drive home with Bacon. Montez complied. The officers followed Montez and Bacon through Chatham County, but then "lost sight" of the vehicle as it crossed into Bryan County.

Montez's brother, Andrew, testified at trial that Montez called

2

him in a frantic state while she was in Savannah. Montez told her brother that "she was afraid because [Bacon] was acting out of character more so than what he normally would." She asked Andrew to meet them along their route home to Hinesville, explaining that she needed help getting Bacon out of her vehicle because the police would not remove him from the car. Andrew testified that he believed Montez was "in danger" because she was "not the type to involve [others] in her business as it relates to her children or husband."

Then, around 4:00 p.m. on March 3, the Liberty County Sheriff's Office received multiple 911 calls reporting that Montez's vehicle had slowly rolled into a local business's storage building off Highway 196. Among the callers was Andrew, who had found Montez inside her vehicle unresponsive. Witnesses reported seeing Bacon exit the back seat of the vehicle after it came to a stop and then casually walk away from the car with a backpack slung over his shoulder.

Police officers and paramedics arrived at the scene and found

Montez dead on the ground with a dime-size gunshot wound to the back of her right shoulder. The medical examiner later confirmed that Montez's cause of death was a gunshot wound to her right scapula and recovered a .380-caliber bullet from Montez's body during her autopsy.

Officer Geoffrey Harriman testified at trial that he located a man, later identified as Bacon, with a mesh backpack walking on the side of Highway 196. Officer Harriman instructed Bacon to drop the backpack and asked for some identification. Bacon dropped the backpack but refused to give his name. He also told Officer Harriman that "[my I.D. is] in my wallet, but I don't know where my wallet is." Bacon told Officer Harriman that he was "coming from Savannah" and going to Hinesville. When Officer Harriman picked up the backpack, he saw, through the mesh exterior, a silver pistol and a wallet. Officer Harriman pulled the gun out of the bag and identified it as a Taurus PT-738 with five .380-caliber rounds in the magazine and one in the chamber. Officer Harriman also found Bacon's wallet, which contained his identification. Bacon was

4

subsequently arrested.

Officers searched Montez's vehicle and found a spent .380-caliber shell casing under the driver's seat. That shell casing, the bullet retrieved from Montez's body, and Bacon's firearm were all sent to the GBI for testing. The GBI's firearm analyst testified that the shell casing found in the car and the bullet found during Montez's autopsy were both fired from Bacon's Taurus PT-738 pistol. He further concluded that Bacon's gun was in "good working condition," that the gun would not fire absent a "pull of the trigger," and that the "trigger remained locked" when the safety was fully engaged.

Bacon testified at trial. He admitted to shooting his mother but claimed that the shooting was an accident. According to Bacon, during the car ride, he removed his pistol from his pants pocket and placed it in his bag. He testified that when "the vehicle made a swift right turn" he reflexively grabbed his backpack to "prevent [his] stuff from falling forward" and "then the gun discharged." Bacon testified that his Taurus PT-738 had design issues that impacted the

5

effectiveness of the gun's safety lock. Specifically, Bacon testified that a special wrench had to be inserted "like a key" into "a little pinhole on the gun" in order to lock the safety mechanism, and that it was difficult to "really know if [the safety was] set or not."

After hearing all of the evidence, the jury found Bacon guilty on all counts.

2. Bacon alleges that the trial court abused its discretion by excluding the testimony of Kayton Smith. During the defense's case-in-chief, counsel sought to qualify Smith as a firearms expert. During voir dire, Smith testified that he had "been in the [firearms] business for 40 years"; that he owned a gun shop; that he was involved in the "sales and service" of firearms; and that he did "minor training, but mostly sales and service." Smith testified that he had certificates from Glock's and Smith & Wesson's armorer's schools, but he did not have anything from Taurus certifying him as an expert on their firearms. He agreed that he had "practical experience" with guns but no educational background on firearms.

The prosecution objected to Smith being tendered as a firearms

expert, arguing that the defense had not laid a sufficient foundation to qualify him as an expert. Defense counsel asked Smith for additional information concerning his background and experience. Smith noted that he had testified in court as an expert witness regarding Smith & Wesson firearms. He also testified that he had been gunsmithing since 1980, wherein he learned how to field strip, clean, and tool new parts for guns. The trial court informed defense counsel that it was "concerned . . . you know, he's been around guns and he's worked on guns. But as to actually taking any courses other than the Glock and the Smith & Wesson courses, you know, you're going to have to give me a little bit more than this."

Defense counsel and the court asked Smith additional questions concerning his background and knowledge of guns. Smith testified that he had 40 years of experience in the sale and service of "various" rifles, shotguns, and handguns including work with antique firearms. Smith also testified he was a "range master" for five years in the early 1980s wherein he "was making sure that people were safe on the [gun] range itself. If there was a malfunction

7

with [a] weapon, I'd go and, you know, put the weapon down. [I'd] clear the weapon until we can make it safe." Smith also testified as to his 15 years owning and operating a gun shop wherein he "did sales, service, like I said, you know, minor repairs [of firearms]." Smith further explained

> I mean, we're not going to get into – we don't get into the trigger-type stuff because of the liabilities for insurance purposes. But things, like, if you've got a barrel – you know, the weapon is jamming, we're going to try and find out why it's jamming and try to solve that problem. A lot of the times, it's just tossing the feed round, that sort of stuff.

The trial court replied, "I don't know. You've had – you know, your testimony is to [the] safety. Do you have any knowledge, outside your own knowledge, as to the safety item without going into it? Do you have any knowledge outside of your own knowledge on that?" Smith stated, "Little things, like fitting safet[ies] to 1911s." The trial court noted, and Smith agreed, that he was talking about "antique collectibles of firearms," and also agreed that the gun at issue was not an antique weapon. When defense counsel asked if Smith carried the Taurus at issue in his store, Smith replied, "Well,

I still carry the Taurus spectrums from time to time, which is the new version .380, which replaced the TCPs."

The trial court stated, "I don't know. He cleans guns. He does minor repairs," and then instructed defense counsel to proffer Smith's testimony, explaining "My concern[], [counsel] is that there's no – like, a Taurus is a low-line handgun. He works on antique guns. He works on collectible guns." The trial court then asked Smith if he had worked on a Taurus gun that had jammed. Smith replied, "Well, yeah, or send them back to the factory, depending on what the problem is."

Defense counsel then proceeded to question Smith regarding his testing of Bacon's gun. Smith testified that he fully inspected the weapon externally and internally. Smith explained that, during his examination, he performed a "trigger-pull test" on the firearm and found that, when the safety was "fully engaged" at 180 degrees, the firearm would not discharge. However, when the safety was only partially engaged at 75 or 70 degrees, "[the firearm] would sometimes fire." When testing the gun, Smith found that, out of the

9

18 times he shot the gun, it misfired three times. Smith explained that the Taurus 700 series had "been discontinued" because "[a]pparently, they . . . were having an issue with [the] keylock safety" and that, at one point in time, there was a class-action lawsuit because of the gun's safety issues.

The trial court asked Smith whether he disassembled the weapon before testing the safety. Smith responded, "Yes, I did." The trial court then concluded, "[W]e can't let him testify. It wasn't the same gun. He's disassembled it. I don't know how he reassembled it. . . . [H]e took it apart and he experienced the safety problems. He did not fire it as it was and as it came to him." The trial court also ruled that Smith's testimony concerning the safety recall was inadmissible hearsay.[2] Defense counsel objected to these rulings.

---

[2] The trial court clarified its ruling in its order denying Bacon's motion for new trial, explaining that the defense had failed to lay a proper foundation to tender Smith as an expert under OCGA § 24-7-707. Specifically, the court found that "Smith's testimony [was] not specific to any subject matter directly within the realm of expertise of which he is qualified," and that his "forty years of experience selling firearms and his ownership and management of a gun store do not qualify him as an expert capable of testifying to the integrity of the safety lock mechanism of the specific firearm at issue in this case." See *Harris v. State*, 310 Ga. 372, 377 n.12 (2) (a) (850 SE2d 77) (2020) ("[I]t is well

Bacon alleges that the trial court abused its discretion by finding that the defense failed to lay the proper foundation to qualify Smith as an expert pursuant to former OCGA § 24-7-707.[3] Pretermitting whether the trial court abused its discretion by excluding Smith as an expert witness, any error was harmless. "In determining whether [an evidentiary] error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so." *Timmons v. State*, 302 Ga. 464, 470 (2) (b) (807 SE2d 363) (2017) (citation and punctuation omitted). "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." Id. (citation omitted).

Here, the evidence establishing Bacon's guilt was strong. Bacon admitted to shooting his mother, but claimed it was an

---

established that the superior court has the power to interpret and clarify its own orders. Such power includes shedding light on the scope of an earlier ruling." (citation and punctuation omitted)).

[3] Although repealed in July 2022, this Code section was in effect at the time of Bacon's trial and provides that "[i]n criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." OCGA § 24-7-707 (2019).

11

accident. The jury also heard testimony that Montez called 911 requesting Bacon be removed from her vehicle, that Montez called her brother in a frantic state prior to the shooting expressing fear of Bacon and requesting help, that Bacon left the car with the murder weapon after his mother had been shot, and that Bacon refused to provide his name or any identification to the police after walking away from the scene. Furthermore, the jury heard Bacon testify that he had previous issues with the safety mechanism on his gun. Although Smith could have provided additional testimony concerning the weapon's safety mechanism, the jury would likely not have given Smith's testimony much weight since Smith disassembled and reassembled the gun before conducting any relevant testing. Consequently, it is highly probable that any error committed by the trial court did not contribute to the verdict. Cf. *Tuggle v. State*, 305 Ga. 624, 627 (2) (825 SE2d 221) (2019) (any error in the admission of evidence was harmless where testimony was cumulative of other evidence already admitted and where there was

strong evidence of guilt).[4]

3. Bacon also alleges that he received ineffective assistance of trial counsel based upon counsel's failure to call Smith as a lay witness and offer testimony concerning the integrity of the safety lock mechanism on Bacon's gun. In order to establish constitutionally ineffective assistance, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984).

To prove deficiency, Bacon must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013)

---

[4] Bacon also alleges that the trial court abused its discretion by finding, in its order denying the motion for new trial, that Smith's testimony was not relevant under OCGA § 24-4-401 and, therefore, inadmissible. However, as discussed, any error committed by the trial court in excluding Smith's testimony would have been harmless.

13

(citation and punctuation omitted). "A strong presumption exists that trial counsel's performance was reasonable and that counsel's decisions and choices at trial fell within the broad range of professional conduct as assessed from counsel's perspective at the time of trial and under the specific circumstances of the case." *Jones v. State*, 296 Ga. 561, 564 (2) (769 SE2d 307) (2015). Furthermore, "[e]ven though [Appellant's] trial counsel died prior to the hearing on the motion for new trial, [Appellant] still must overcome this presumption and is not relieved of his heavy burden of proving ineffective assistance." *Rhoden v. State*, 303 Ga. 482, 484 (2) (813 SE2d 375) (2018).

"In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (citation and punctuation omitted). If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579, 580 (2) (731

14

SE2d 359) (2012).

At the hearing on Bacon's motion for new trial, Bacon was unable to call his lead trial counsel, John Ely, as a witness because counsel had died. Instead, to support his claim of ineffectiveness, Bacon called Allison Lane Bruns, who sat as second-chair during Bacon's trial. Bruns testified that Bacon's trial was her first as an attorney and that her responsibilities were to handle opening and closing arguments and to cross-examine "one, maybe two, witnesses." When asked why the defense never sought to tender Smith as a lay witness, Bruns responded, "I'm not sure. I was a baby attorney, so that was not my decision. I'm not sure why Mr. El[y] did not go that route, and I definitely don't want to speak for him since he's not here to speak for himself." Bruns testified that she did not discuss tendering Smith as a lay witness with Ely, but she did explain that "[o]ur defense was that [the shooting] was an accident and that the gun fired on safety." She further testified that the defense's strategy concerning Smith was to "ha[ve] him test fire the gun and to look at it since he was a firearms expert," and she recalled

15

that he was "able to determine that the gun would actually fire at a certain degree of the safety being on." Bruns opined that Smith's testimony would have been helpful to Bacon's defense's theory and agreed that Smith's testimony would have been consistent with Bacon's testimony at trial.

Based on this record, we agree with the trial court that Bacon has failed to show that trial counsel acted deficiently under *Strickland*. It is well settled that "[a]n attorney's decision about which defense witnesses to call is a classic matter of trial strategy, and such a decision will not form the basis for an ineffectiveness claim unless it is so unreasonable that no competent attorney would have made that decision under the circumstances." *Davis v. State*, 315 Ga. 252, 262 (4) (a) (882 SE2d 210) (2022) (citation and punctuation omitted). Indeed, "[t]he standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance." *Harris v. State*, 280 Ga. 372, 375 (3) (627 SE2d 562) (2006) (citation and punctuation omitted).

Here, we cannot say that trial counsel's "decisions regarding trial tactics and strategy" were "so patently unreasonable that no competent attorney would have followed such a course." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016) (citation and punctuation omitted). See also *Capps v. State*, 300 Ga. 6, 12 (2) (e) (792 SE2d 665) (2016) ("Hindsight has no place in an assessment of the effectiveness of trial counsel. . . . Nor will speculation support a claim of ineffective assistance of counsel." (Citations omitted)). Indeed, counsel could have reasonably decided not to present Smith as a lay witness because of Smith's admissions that he had little prior experience with the specific type of weapon at issue, and that he did not test the firearm's safety mechanism until after disassembling and reassembling the weapon undermined the credibility of his proffered testimony. Based on the foregoing, Bacon has failed to show that trial counsel was deficient by not calling Smith as a lay witness at trial.

*Judgment affirmed. All the Justices concur.*

17