319 Ga. 149
FINAL COPY

S24A0445. GOLD v. THE STATE.

McMILLIAN, Justice.

Appellant Justin Christopher Gold was convicted of malice murder in relation to the stabbing death of Antonio DePass.[1] On appeal, Gold argues that the trial court erred in charging the jury on excessive force and that his trial counsel rendered ineffective assistance by failing to object to evidence of DePass's good character or to a detective's testimony about whether Gold's conduct was

---

[1] DePass died on September 11, 2018. On November 15, 2018, a DeKalb County grand jury indicted Gold for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a knife during the commission of a felony (Count 4). At a trial from November 8 through 16, 2021, a jury found Gold guilty on all counts. The trial court sentenced Gold to life in prison without the possibility of parole for malice murder, plus a consecutive five years in prison for the weapon charge. The felony murder count was vacated by operation of law, and the aggravated assault count merged for sentencing purposes.

Gold filed a timely motion for new trial on November 17, 2021, which was amended by new counsel on July 28, 2023. Following a hearing on August 2, 2023, the trial court denied Gold's motion for new trial, as amended, on October 10, 2023, except the trial court modified the sentence on Count 1 to life in prison with the possibility of parole. Gold filed a timely notice of appeal on November 1, 2023, and the case was docketed to the April 2024 term of this Court and thereafter submitted for a decision on the briefs.

consistent with an assertion of self-defense. For the reasons that follow, we affirm.

The evidence at trial showed that on the afternoon of September 11, 2018, as a resident arrived home at the Covington Glenn Apartment Complex and pulled into her parking spot, she saw a man lying face-down in a pool of blood in the grass nearby, so she called 911. Officers with the DeKalb County Police Department arrived on the scene, where they found a dead body, later identified as DePass, with wounds to the face, neck, and shoulder. Officers found DePass's car nearby, still running, with a trail of blood leading from the driver's side of the car to DePass's body.

An Uber driver also saw DePass's body, called 911, and spoke with officers when they arrived. She explained during her 911 call that she had received a request to pick up a rider from the apartment complex, and when she arrived, she saw the body. She also interacted with the man who had requested the ride, but she cancelled his ride because he was "acting really strange" and "trying to rush [her] off," but she "didn't feel comfortable leaving." When

2

officers arrived on scene and spoke with the Uber driver, she provided a physical description of the man who had requested the ride; the e-mail address associated with the rider's Uber account, which included the name "jgold"; and the address where he had requested to be taken.

Based on this information, an officer conducted surveillance on that address, where he observed a person matching the description given by the Uber driver exit the home while carrying a red bag and ride away in the passenger side of a vehicle. The officer conducted a traffic stop on the vehicle, and the passenger, Gold, was non-compliant, yelled at the officer to shoot him and kill him, and tried to flee as he was being arrested. The bag Gold carried contained a bloody knife, and DNA testing confirmed the blood on the knife to be DePass's.

Gold was arrested and transported to the police department where he waived his rights under *Miranda v. Arizona,* 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and was interviewed by Detective Bryan Smith. The interview was audio-recorded. During

the interview, Gold initially stated that DePass was coming to meet him to give him money but that when Gold came outside, he found DePass already dead, after which Gold picked up the knife from the ground; Gold also said that he noticed another person sitting in the passenger seat of DePass's car. After being challenged on this version of events, Gold admitted that he and DePass had argued over the money, but Gold maintained that he did not stab DePass. Gold said that DePass arrived at the apartment complex and Gold greeted him, but that Gold then went inside to change and when he came back out, he found DePass on the ground bleeding; Gold maintained that another person was sitting in DePass's vehicle. Later, another detective spoke to Gold, and at that time, Gold asked "can I please just kill myself?," before admitting that he stabbed DePass, stating that DePass pulled a knife on him and swung it at him, so Gold took it from DePass, and then Gold stabbed DePass because "I was trying to defend myself and I was mad that he did that."

The medical examiner who performed DePass's autopsy

4

testified that DePass suffered "probably 20 different cuts on his face," and a "fatal" stab wound to his shoulder that severed his aorta and trachea, causing massive blood loss and blood aspiration; the medical examiner ruled DePass's death a homicide. DePass's sister testified at trial that shortly before DePass's death, Gold had contacted their mother about money that DePass owed him. During their investigation, law enforcement officers also discovered text messages sent between Gold and DePass on September 11, 2018, about settling a drug debt; in those messages, DePass expressed anger about Gold contacting DePass's mother regarding the debt.

1.     Gold contends that the trial court erred in charging the jury on excessive force.[2] More precisely, Gold argues that because he—who provided the only direct evidence about what happened

---

[2] The trial court charged the jury:
> A defendant is not justified in using excessive force while acting in self-defense. If you decide that the defendant used more force than was reasonably necessary to defend against the alleged victim's threats or use of force, then the defendant's actions would not be justified.

See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 3.16.20.

during the altercation between himself and DePass—claimed that he acted in response to DePass attacking him with the knife, there was no evidence that DePass used anything less than deadly force, making it confusing and misleading to charge the jury on excessive force.

Gold objected to the excessive force charge at the charge conference and renewed his objection after the trial court charged the jury, so the issue is preserved for ordinary review on appeal. *Wynn v. State*, 313 Ga. 827, 839 (5) (874 SE2d 42) (2022). "When determining whether a charge is erroneous, we look to the charges given as a whole." Id. (citation and punctuation omitted). "Jury instructions must tell the jury the law of the case fully and fairly and are authorized if supported by slight evidence." *Bowman v. State*, 317 Ga. 457, 463 (2) (b) (893 SE2d 735) (2023) (citations and punctuation omitted).

The trial court provided the full suggested pattern jury instructions on self-defense, including that "[a] defendant is justified in using force that is intended or likely to cause death or serious

6

bodily injury when he reasonably believes that the use of such force is necessary to prevent a death or serious bodily injury to himself or the commission of a forcible felony, which means a felony that involves the use of force or violence against another"; "[t]he State has the burden of proving beyond a reasonable doubt that the Defendant's actions were not justified"; and "[a] person who is not the aggressor is not required to retreat before being justified in using force he or she reasonably believes to be necessary." See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases §§ 3.10.10; 3.10.13.

These charges were a correct statement of the law, see OCGA §§ 16-3-20 (1); 16-3-21 (a); 16-3-23.1, and, given the evidence presented, the trial court did not err in also giving the suggested pattern jury instruction on excessive force as part of its broader instructions on self-defense. Although Gold claimed that DePass pulled the knife on him and that Gold was defending himself in disarming DePass, the jury was not required to believe this account, particularly in light of Gold's conflicting stories about the stabbing.

7

Moreover, Gold inflicted some 20 knife wounds upon DePass, which was at least slight evidence that the force Gold used was excessive. See *Wynn*, 313 Ga. at 838-40 (5) (holding that trial court's self-defense charge, which included charge on excessive force, "when viewed as a whole, was proper" where the only evidence about the sequence of events leading to the deceased's death came from the defendant's testimony that the deceased was the initial aggressor and was going to kill him); *Welbon v. State*, 278 Ga. 312, 312 (1), 313 (3) (602 SE2d 610) (2004) (explaining that "[t]his Court has held that the [excessive force] charge, which comes from the Suggested Pattern Jury Instructions, is a correct statement of the law, and it was proper in light of the entire justification charge given," where defendant claimed that he shot the deceased four to six times in self-defense because she was reaching for a gun (citation omitted)); see also *Jackson v. State*, 317 Ga. 139, 144 (1) (891 SE2d 878) (2023) ("[E]ven if [the deceased] was the initial aggressor as [the defendant] claimed, a jury could easily reject his self-defense claim given that [the defendant] brutally and repeated[ly] stabbed [the victim].").

8

Accordingly, this enumeration of error fails.

2. Gold also asserts that his trial counsel rendered ineffective assistance by failing to object (a) to improper evidence of DePass's good character from the testimony of DePass's sister and (b) to testimony of Detective Smith that opined that Gold's actions were not consistent with an assertion of self-defense. These claims fail.

To succeed on a claim of ineffective assistance of counsel, Gold must show both that his counsel's performance was deficient and that such deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To satisfy the deficiency prong, Gold must demonstrate that his counsel "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Bacon v. State*, 316 Ga. 234, 239 (3) (887 SE2d 263) (2023) (citation and punctuation omitted). In doing so, Gold must overcome "[a] strong presumption . . . that trial counsel's performance was reasonable and that counsel's decisions and choices at trial fell within the broad range of professional conduct as

9

assessed from counsel's perspective at the time of trial and under the specific circumstances of the case." Id. (citation and punctuation omitted). To establish prejudice, Gold "must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different." *Bates v. State*, 313 Ga. 57, 62 (2) (867 SE2d 140) (2022). And if Gold fails to make a sufficient showing on either the deficiency or the prejudice prong, we need not address the other prong. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022).

(a) Gold argues that his trial counsel rendered ineffective assistance by failing to object under OCGA §§ 24-4-404 (character evidence) and 24-6-608 (character and conduct of witness) to DePass's sister's trial testimony, in response to the prosecutor's question "can you tell the jury just a little about who your brother was as a person?," that "Antoine was the life of the party, the nice guy. He was always willing to help someone," and that "[h]e was a great dad."

We recognize that "reasonable decisions as to whether to raise

10

a specific objection are ordinarily matters of trial strategy and provide no ground for reversal," *Clements v. State*, 317 Ga. 772, 798 (7) (c) (896 SE2d 549) (2023) (citation and punctuation omitted), and that an attorney in the position of Gold's trial counsel may reasonably choose not to object to certain evidence even if it is objectionable, particularly where, as here, DePass's sister's comments were fleeting and counsel may not have wanted to antagonize a sympathetic witness. See, e.g., *Moore v. State*, 315 Ga. 263, 268-69 (2) (c) (882 SE2d 227) (2022) (counsel acted reasonably in not objecting to victim's grieving mother's testimony that victim was "a 'good kid' and a good older brother," as trial counsel "might very well have wanted to avoid the appearance of attacking a grief-stricken witness"); *Kilpatrick v. State*, 276 Ga. 151, 152-53 (2) (575 SE2d 478) (2003) (counsel acted reasonably in not objecting to non-crucial testimony of victim's mother to avoid appearing insensitive). However, we need not decide whether counsel's failure to object to this allegedly improper good character evidence fell within the broad range of professional conduct because Gold has not carried his

burden of proving a reasonable probability that had his trial counsel successfully objected to DePass's sister's brief positive comments about her brother, the result of Gold's trial would have been different.

As the trial court observed in its order denying Gold's motion for new trial, it is unlikely the jury was surprised to hear DePass's sister remember her deceased brother fondly. Moreover, despite Gold's argument on appeal that this testimony was detrimental to his claim that DePass was the initial aggressor, DePass's sister's testimony did not touch on whether DePass had a character of peacefulness and thus provided little, if any, rebuttal to Gold's claim that DePass attacked him first. Cf. OCGA § 24-4-404 (a) (2) ("[E]vidence of a character trait of peacefulness of the alleged victim" may be "offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor."). Finally, aside from the complained-of testimony, the evidence of Gold's guilt was strong. This evidence included Gold's admission that he stabbed DePass, Gold's possession of the murder weapon, his leaving the

scene without calling for any aid for DePass, the several changing versions of events he told police, his statement that he stabbed DePass, in part, because he was mad at DePass, evidence that DePass suffered about 20 different cuts on his face in addition to the fatal stab wound, evidence of motive regarding a money debt between the two men, and Gold's erratic behavior after the killing in attempting to flee and repeatedly expressing a desire to die himself. See, e.g., *Clements*, 317 Ga. at 798 (7) (c) ("Even if [a witness's] testimony was improper character evidence that should have been excluded . . . the admission of this testimony did not prejudice [defendant's] defense given the other compelling evidence [of guilt]."); *Ingram v. State*, 316 Ga. 196, 203-05 (1) (a) (887 SE2d 269) (2023) (no prejudice in failing to object to testimony of the mother of the victim's children that the victim was "a good person" and a "good father" who "would give you literally the shirt off his back" and of the victim's girlfriend that the victim was "a very caring person" who "loved his family" and "[w]anted everybody to be happy around him," because "[t]he evidence of [defendant's] guilt in this

13

case was strong" (punctuation omitted)). Because Gold has failed to establish that he was prejudiced by trial counsel's failure to object, this claim of ineffectiveness fails.

(b) Gold argues that his trial counsel rendered ineffective assistance by failing to object on the proper grounds to a portion of Detective Smith's testimony. Specifically, Detective Smith was asked on direct whether a statement Gold made in his interview— that he "didn't want to be around when the police came"—was "[i]n [Detective Smith's] experience, . . . consistent with self-defense[.]" Detective Smith replied, "No."[3] Gold argues that trial counsel should have objected to Smith's testimony on the grounds that it improperly drew a legal conclusion and opined on the law regarding self-

---

[3] This testimony came during the following exchange between the prosecutor and Detective Smith:

Q:     Okay. And Justin said I just didn't want to be around when the police came. Is that what he just said on the tape?
A:     Yes, it is.
       [Trial Counsel]: Objection, Your Honor, leading.
       Court: Sustained. Don't lead the witness.
       [State]: I'll rephrase.
By the prosecutor:
Q:     In your experience, is a statement like that consistent with self defense?
A:     No.

14

defense.

This testimony of Detective Smith was permissible under OCGA § 24-7-701 (a)[4] and OCGA § 24-7-704 (a).[5] Relying on these Code provisions, we have held that as a general matter a lay witness may offer opinion testimony based on experience even if the testimony touches upon an ultimate issue to be decided by the jury. See *Grier v. State*, 305 Ga. 882, 884-86 (2) (a) (828 SE2d 304) (2019) (witnesses' opinion that defendant "must have been the one to kill the victims" was not inadmissible for "invad[ing] the jury's province and comment[ing] upon the ultimate issue" but was admissible under OCGA §§ 24-7-701 (a) and 24-7-704 (a)); see also *Mack v.*

---

[4] OCGA § 24-7-701 provides:
    If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:
        (1) Rationally based on the perception of the witness;
        (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and
        (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702 [Expert testimony; qualifications as expert].
[5] OCGA § 24-7-704 (a) states: "[T]estimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact."

15

*State*, 306 Ga. 607, 609-10 (2) (832 SE2d 415) (2019) (no error in admitting comments by detective that touched on the ultimate issue of accident in a fatal shooting where the comments were offered as lay opinion and to counter the defense's theory); *Taylor v. State*, 365 Ga. App. 30, 32-33 (877 SE2d 286) (2022) (detective's testimony that based on his experience, autopsy evidence was inconsistent with defendant's self-defense theory, an ultimate issue in the case, was admissible lay witness testimony, rather than inadmissible expert testimony) (citing *Bullard v. State*, 307 Ga. 482, 492 (4) (837 SE2d 348) (2019); *Mack*, 306 Ga. at 609-10 (2)).

"Trial counsel cannot be deficient for failing to object to admissible testimony." *Grier*, 305 Ga. at 886 (2) (a). Therefore, this claim of ineffective assistance also fails.

*Judgment affirmed. All the Justices concur.*

16

Decided May 29, 2024.

Murder. DeKalb Superior Court. Before Judge Asha Jackson.

*Daniel H. Petrey*, for appellant.

*Sherry Boston, District Attorney, Thomas L. Williams, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Michael A. Oldham, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.